Morris S. Getzels, Esq. (SBN 70947)
MORRIS S. GETZELS Law Office
6047 Tampa Avenue, Suite 307
Tarzana, CA 91356-1176
Telephone (818) 881-5550 or (310) 288-0200
Facsimile   (818) 881-5558
Email: morris@getzelslaw.com

Attorney for Plaintiff,
HEIDI SUMMER WRIGHT PLATER
a/k/a HEIDI WRIGHT

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| HEIDI SUMMER WRIGHT PLATER, a/k/a HEIDI WRIGHT )<br><br>Plaintiff, )<br><br>vs. )<br><br>THE UNITED STATES OF AMERICA, ELAINE DUKE, ACTING SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, and DOES 1 through 10, inclusive, )<br><br>Defendants. ) | **CASE NO: 2:17-CV-04297-VAP(JEM)**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:     February 5, 2018<br>Time:     2:00 p.m.<br>Place:    Courtroom 8A<br>          First Street Courthouse<br><br>Honorable Judge Virginia A. Phillips |

# <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1.   THE FIRST CAUSE OF ACTION FOR DISABILITY
     DISCRIMINATION IS SUFFICIENTLY PLED. . . . . . . . . . . . . . . . . . . . . . 6

2.   THE TORT OF INTENTIONAL INFLICTION OF
     EMOTIONAL DISTRESS IS ADEQUATELY PLED. . . . . . . . . . . . . . . . 7

3.   CALIFORNIA DISABLED PERSONS ACT IS SUFFICIENTLY
     PLED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4.   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IS
     SUFFICIENTLY PLED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5.   NEGLIGENT HIRING, TRAINING, AND SUPERVISION
     ARE ADEQUATELY PLED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ELAINE DUKE SHOULD NOT BE DISMISSED. . . . . . . . . . . . . . . . . . . . . . . 14

IF THE COURT GRANTS ANY PART OF DEFENDANTS' MOTION,
LEAVE TO AMEND SHOULD BE GRANTED. . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

# TABLE OF AUTHORITIES

**CASES:**                                                               **Page No.**

*Bavis v. UAL Corp.* (In Re: September 11 Litig.)

      811 F.Supp 2d 883 (S.D. N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Bell v. Hood* 327 U.S. 678 (1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

*Conley v. Gibson* 335 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Corbett v. Transportation Security Administration*

      767 F. 3d 1171(11th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gager v. U.S.* 149 F.3d 918 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Knievel v. ESPN* 393 F. 3d 1068 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . 1

*Lane v. Pena* 518 U.S. 187 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Lopez v. Johnson* 333 F. 3d 959 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . 14

*Milano v. Aguilerra* 2011 WL 662973

      (S.D. Cal. February 14, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nurse v. U.S.* 226 F.3d 996 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sheeley v. MRI Radiology Network, P.A.*

      500 F.3d 1173 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Thomson v. Stone* 2006 WL 770449

      (E.D. Mich. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Vickers v. U.S.* 288 F. 3d 944 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Vinieratos v. United States* 939 F. 3d 762, 772 (9th Cir. 1991). . . . . . . . . . . . . . 14

**STATE STATUTES**:

California Civil Code § 54. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Civil Code § 54.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES (cont)

**FEDERAL STATUTES:**                                                    Page No.

28 U.S.C. § 2674. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 U.S.C. § 794. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. § 2000e - 16(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

49 U.S.C. § 44901 et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

49 U.S.C. § 44903. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

49 U.S.C. § 44903(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12

49 U.S.C. § 44903(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

49 U.S.C. § 44903(b)(3)(A) and (B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**FEDERAL REGULATIONS**:

49 CFR § 1544.411(d)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

49 CFR § 1544.405. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

49 CFR § 1544.405-1544.411. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

49 CFR § 1560.101(a)(ii)(5)(iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

49 CFR § 1560.105(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

49 CFR § 1560.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Plaintiff Heidi Wright (hereinafter "Ms. Wright") opposes Defendants' motion to dismiss the First Amended Complaint, which alleges seven causes of action. The causes of action are each sufficiently pled, and the Court should deny the Defendants' motion.

## INTRODUCTION

When ruling on a motion to dismiss, the Court must "accept all factual allegations in the First Amended Complaint as true and construe the pleading in the light most favorable to the nonmoving party." *Knievel v. ESPN* 393 F. 3d 1068, 1072 (9th Cir. 2005).

## FACTS

The facts alleged in the First Amended Complaint are as follows:

Heidi Wright is a disabled person who suffers from the effects of strokes, which effects include that she cannot speak and cannot write[1]. Heidi Wright cannot walk, and is confined to a wheelchair. She is incontinent, and wears diapers. She has diabetes, which requires that she eat at regular intervals. Heidi Wright also has undergone hemapheresis, a blood treatment procedure, has suffered a CVA (cerebrovascular accident - a type of stroke), suffers from hypertension, coronary artery disease and chronic ischemic heart disease, sick sinus syndrome, and expressive aphasia. Heidi Wright's stroke affected her right side. Because she is right-handed, she cannot write; her right hand cannot hold a pen. Further, as of April 1, 2014, the date of the events alleged in the First Amended Complaint, Heidi Wright was taking four prescription medications daily, and had a prescription for a fifth medication, to be taken as needed for her systolic blood pressure, if it exceeded 160.

---

[1]Although not alleged in the First Amended Complaint, Ms. Wright's Date of Birth is September 28, 1955 a fact known to the TSA screeners, who were presented with Ms. Wright's California Identification Card, a picture identification card issued by the California Department of Motor Vehicles a copy of which is attached hereto as Exhibit A. The Complaint does allege that Ms. Wright had with her, at the airport, her California Identification Card. (First Amended Complaint, Paragraph 2)

1

On or about April 1, 2014, Heidi Wright, who was moving to Arizona that day, attempted to board an airplane for a short flight to Phoenix, Arizona, Southwest Airlines Flight 1015, departing from Los Angeles International Airport at 9:55 p.m. The estimated time of flights from Los Angeles International Airport to Phoenix, Arizona is about an hour and a half. At the Los Angeles airport, Heidi Wright had a California Identification card containing a photograph of Heidi Wright. Although the card had expired on September 28, 2012, at the time of the events alleged herein, Heidi Wright had with her at the airport an original document from the California Department of Motor Vehicles showing that she had applied for an California Identification Card Renewal. Heidi Wright's Social Security card was also presented at that time, when Heidi Wright was trying to board the airplane.

Moreover, one of Heidi Wright's sisters, Sherry Wright was in the airport with Heidi Wright and could identify her. Thereafter, another of Heidi Wright's sisters, Chantel Bonet was on the telephone with the TSA screeners, Sandra Vences and Pablo Paiva and Sherry Wright in a three person conference call.

The two aforementioned Transportation Security Administration employees who perform a policing function, Ms. Sandra Vences and Mr. Pablo Paiva, were not satisfied with the California Identification Card as proof of Heidi Wright's identity, even though it contained Heidi Wright's photograph, because it had expired. Ms. Vences and Pablo Paiva would not accept the Renewal Application for the California Identification Card, even though it was an original document, dated March 25, 2014, just six days earlier. Further Sherry Wright had brought Heidi Wright's Social Security card to the airport. Because Sandra Vences and Pablo Paiva did not accept Heidi Wright's documents as proof of Ms. Wright's identity, they did not allow Ms. Wright to board the airplane, Flight 1015, Southwest Airlines, Los Angeles International Airport to Phoenix.

Plaintiff is informed and believes and thereon alleged that the United States

2

of America's Department of Homeland Security's Transportation Security Administration has a procedure called "Certification of Identity" and a form entitled "Certification of Identity" that allows a person without any other identification to board an airplane.  At no time did Ms. Vences or Mr. Paiva ever offer to have a Certification of Identity form completed for Heidi Wright, despite the fact that Heidi Wright's sister Sherry Wright was present in the airport at the time of the events alleged herein, and another sister, Chantel Bonet, who holds a Power of Attorney for Heidi Wright, was on the telephone with the TSA screeners, Sandra Vences and Pablo Paiva, at the time that Sandra Vences and Pablo Paiva[2] were denying Ms. Heidi Wright the right to board the airplane, because she could not identify herself by speaking or writing her name.

Between 8:00 p.m. to 9:44 p.m. on April 1, 2014, the TSA screeners repeatedly asked Heidi Wright to say her name or to write her name to identify herself; the requests continued constantly for one hour and forty-four minutes. The two Transportation Security Administration employees, Ms. Sandra Vences and Pablo Paiva, were responsible for processing the passengers for Flight 1015. As part of the screening process, Ms. Vences and Pablo Paiva asked Heidi Wright to say her name or to write her name to identify herself, because they would not accept as proof of Heidi Wright's identity, the documents presented, the California Identification card with Ms. Wright's picture on it (Exhibit A hereto), the original renewal application to the DMV for that card (Exhibit B hereto), and her Social Security card. Ms. Vences and Pablo Paiva made it clear to Heidi Wright that if she did not say or write her name, she would not be allowed to board the airplane. Heidi Wright was almost immediately reduced to tears and remained crying for the entire hour and forty-four minutes that Ms. Vences and Pablo Paiva demanded that

---

[2]On September 7, 2017, based on certifications that Ms. Vences and Mr. Paiva were acting in the course and scope of their employment with the United States at all times material to the incidents alleged in the Complaint, the Court issued an Order changing the Caption to show only the United States of America as the Defendant

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  Heidi Wright say or write her name. Heidi Wright suffers from aphasia which
2  makes it difficult, if not impossible, to speak, because of brain damage. Heidi
3  Wright tried hard to say her name, but could only make garbled sounds. Further,
4  Heidi Wright could not hold a pen so as to write her name.

5      Defendants told Heidi Wright that she could not board the airplane,
6  Southwest Airlines, Flight 1015 to Phoenix, departing at 9:55 p.m.  The flight left
7  without Heidi Wright because the United States of America, Department of
8  Homeland Security, Transportation Security Administration would not let her
9  board the airplane.

10     Heidi Wright's Medicare/Medicaid payments had been terminated in
11 California, effective March 31, 2014. Heidi Wright's Medicare/Medicaid
12 payments had been transferred to Arizona. Her housing at a skilled nursing
13 facility, Century Skilled Nursing Care, in Los Angeles had been terminated as of
14 March 31, 2014, in California, and a residence facility for disabled persons in
15 Arizona had been arranged for Heidi Wright. Because Heidi Wright no longer had
16 any medical benefits in California, and had nowhere to live in California, Heidi
17 Wright needed to physically be moved to Arizona by April 1, 2014. Only by Heidi
18 Wright being physically present in the residence facility in Arizona would the
19 State of Arizona pay for Heidi Wright to live in the residence facility. Heidi
20 Wright's family does not have sufficient funds to pay for a residence facility with
21 medical staff for Heidi Wright, or to pay for Heidi Wright's medical care and
22 treatments or her daily medication. Her sister, Chantel Bonet, had already moved
23 to Arizona, to be near her sister Heidi Wright, had arranged for Heidi Wright's
24 residence in Arizona, and had transferred Heidi Wright's benefit payments to
25 Arizona.

26     Moreover, anticipating that her sister, Heidi Wright, would need assistance
27 in traveling, Chantel Bonet started to make preparations before April 1, 2014 for
28 Heidi Wright's moving to Arizona. On March 20, 2014, Ms. Bonet wrote to the

California Department of Motor Vehicles requesting that Heidi Wright's California Identification Card be renewed. On March 31, Sherry Wright, another sister of Heidi Wright, took Heidi Wright to the California Department of Motor Vehicles to obtain a valid California Identification Card renewal. The Department of Motor Vehicles issued a receipt for the application for the identification card renewal which Sherry Wright brought to the airport on April 1, 2014 and presented as part of the documents to identify Heidi Wright.

On March 25, 2014, Ms. Bonet wrote letters to the Chief Executive Offices of four airlines, Southwest, Delta, American, and United, asking for assistance for boarding Heidi Wright because she is unable to talk or walk. Beginning on March 25, 2015 and thereafter on March 26, March 27, and March 30, 2014, Chantel Bonet telephoned the Transportation Security Administration's "TSA Cares" Department. TSA Cares handles preparing disabled persons to board airplanes at Los Angeles International Airport. On those four occasions when Ms. Bonet telephoned TSA Cares, Ms. Bonet did not receive assistance from TSA Cares. On March 31, 2014, Ms. Bonet telephoned TSA Cares Supervisor Karen Hennington. Ms. Bonet left a voicemail with TSA Cares Supervisor, Karen Hennington, stating that Heidi Wright cannot talk, walk, or write, so what are the appropriate steps to take for Heidi Wright to board the airplane? Ms. Hennington never returned Ms. Chantel Bonet's telephone call.

Instead of a one hour and a half flight to Phoenix, Arizona, the next fastest way to have Heidi Wright transported to Arizona by public transportation was by bus. Accordingly, Ms. Chantel Bonet arranged for a taxi-cab to pick-up Heidi Wright at the airport, take Heidi Wright to the bus terminal, and for the taxi-cab driver to remain with Heidi Wright, until the bus left for Phoenix. Further, Ms. Bonet arranged for Heidi Wright to wear a piece of paper pinned onto Heidi Wright's blouse which stated:

"Control #AG496900, confirmation number 27642006, password: Chantel.

5

1    I cannot speak, please help me, I am going to Phoenix, Arizona. I don't

2    need to get off until I get to Phoenix, Arizona. Emergency Number (602)

3    600-1099."

4    Instead of less than an hour and a half flight, Heidi Wright had to sit on the

5    bus for about 14 hours. Because there was no one on the bus who could help her

6    change, Heidi Wright wore the same diaper for all 14 hours.

7    Because the TSA screeners stopped Heidi Wright from boarding the plane,

8    the 14 hour bus ride was the best public transportation available to Heidi Wright at

9    that time, that could take her to Phoenix, Arizona, to arrive the same day. Heidi

10   Wright's flight, Southwest Airlines Flight 1015 was the last flight to Phoenix that

11   night, April 1, 2014, from Los Angeles. Heidi Wright could not take another flight

12   that night. Further, because Heidi Wright could not get past the TSA security

13   screening, Heidi Wright could not fly to Phoenix at all.

14   Based on these facts, Plaintiff has pled 7 causes of action, as set forth

15   below, all of which are sufficiently pled.

16                                    **ARGUMENT**

17   **1.    THE FIRST CAUSE OF ACTION FOR DISABILITY**

18         **DISCRIMINATION IS SUFFICIENTLY PLED**

19   Ms. Wright sues under 29 U.S.C. § 794. Defendants ask the Court to

20   dismiss ths cause of action on the grounds that Ms. Wright cannot recover

21   compensatory damages.

22   Defendants cite *Lane v. Pena* 518 U.S. 187 (1996) to support their argument

23   that Ms. Wright cannot recover compensatory damages for this cause of action.

24   Ms. Wright respectfully submits that in light of later cases, *Lane v. Pena*

25   may no longer be good law.

26   In *Sheeley v. MRI Radiology Network, P.A.* 500 F.3d 1173 (11th Cir. 2007),

27   in deciding what the Court states is a case of the first impression, the Court finds

28   that emotional distress damages can be recovered under the Rehabilitation Act of

                                          6

1973, 29 U.S.C. § 794.

In making this ruling, the Court finds that emotional distress damages are foreseeable from disability discrimination. The Court also states that they are bound by the presumption that "federal courts may use any available remedy to make good the wrong done." quoting from *Bell v. Hood* 327 U.S. 678 (1949). *Sheely, supra* at pp. 1198-1199. Ms. Wright respectfully submits that *Lane v. Pena* should be revisited in light of *Sheely*. The damages for emotional distress are different than compensatory damages that *Lane v. Pena* held cannot be recovered.

## 2.   THE TORT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS ADEQUATELY PLED

Defendants' argument against this cause of action boils down to an assertion that the Defendants' conduct was not that outrageous. But it was.

Defendants' argument is not one of law, but of degree of wrongfulness.

Ms. Wright was treated in a way that was outside the bounds of decency, that was atrocious, and should not be tolerated by a civilized society.

Ms. Wright had the proper identification required. Defendants should have accepted it. Moreover, according to the official TSA, Department of Homeland Security website, passengers without ID can still board an airplane. See Exhibit C hereto, from the Department of Homeland Security official website, under heading "Forgot Your ID?"  Not only did Defendants' employees violate the strict rules under which they operate (see *infra* re: why discretionary function exception does not apply, Page 11, Line 3 - Page 14, Line 12) but without any regulatory, statutory, or any authority at all, the Defendants' employees, the TSA screeners made up a requirement that Ms. Wright had to do one of two acts that she physically could not do, say her name or write it down.

That is not how a traveler identifies themselves to a TSA screener. According to the Department of Homeland Security's official Website, Adult passengers over 18 need to show valid identification, See Exhibit C hereto -

7

Identification (See also "Forgot Your ID?") See 49 CFR § 1560.3 which defines a Verifying Identity Document. On its face, it is not proof of identity to say a name or write it down.

It was obvious after about a minute that Heidi Wright is so disabled that she cannot speak words at all, and cannot write her name. Therefore, it was just cruel for Defendants to keep demanding that Ms. Wright say or write her name, for an hour and forty-four minutes. If that was not outrageous conduct beyond the bounds of decency that should not be tolerated in a civilized society, then I do not know what is.

Defendants were torturing Ms. Wright, commanding her to do something she could not do, and repeating those commands over and over again for a hour and 44 minutes. Ms. Wright had identified herself, with a picture ID containing her name and birthdate (a copy of which is attached hereto as Exhibit A).

Even though she had identified herself and had a competent adult with her also identifying her[3], Defendants bombarded Ms. Wright, insisting that if she could not say her name or write it down, they would not let her board the plane. Which is worse, the fact that saying a name or writing it down is not proof of identity under any statute, rule or regulation, or relentlessly badgering a middle-aged black woman, a stroke victim confined to a wheelchair and unable to speak or write, to do something that is physically impossible for her to do, for an hour and forty-four minutes?

Defendants try to minimize what they did, but it was atrocious behavior. To argue that it was only a mere insult, indignity, threat, annoyance, petty oppression or other trivialities is itself an insult that just adds to the injury.

Defendants' contention that their conduct was not atrocious, is atrocious in

_____

[3]Under 49 CFR § 1560.105(c)(4) an adult accompanying a minor can verify the minor's identity. Here, an adult with a disability was accompanied by an adult who verified Ms. Wright's identity.

8

and of itself. Further, it is <u>not</u> standard operating procedure to demand that the traveler state or write their name; Defendants cite no authority that it is.

To say as Defendants do, that this behavior was only "insensitive" is to close one's eyes to the reality of what occurred.

Further, it is <u>not</u> irrelevant that Defendants failed to follow their own statutes, rules, and regulations. There were alternative methods to verify Ms. Wright's identity as posted on the TSA website under Forgot Your ID? (See print-out from TSA website, attached hereto as Exhibit C). Further, you can go on the TSA website and printout a "TSA Notification Card: Individuals with Disabilities and Medical Conditions (A copy is Exhibit D hereto)

Ms. Wright's First Amended Complaint fully sets forth the facts, so the argument that Ms. Wright has alleged "merely naked assertions devoid of further factual enhancement" is contrary to the actual allegations in the Complaint. Defendants argue, <u>without a citation to any legal authority</u>, that there is no "serious or lasting disruption of her life." That is contrary to the law. There does not have to be a lasting disruption of Ms. Wright's life for her to adequately allege intentional infliction of emotional distress.

The TSA screeners in this case lost sight of the purpose of identifying a passenger by name, which is to see if that person is on a watch list for terrorists.

Ms. Wright is obviously not a terrorist. Having her name, the TSA screeners could have compared her name to those names on the watch list. See 49 CFR § 1560.101(a)(ii)(5)(iii). See also 49 CFR § 1560.3 which defines the watch list. Further, under 49 CFR § 1560.3, a non-traveler can escort a passenger with a disability or a minor. Because an adult can verify a minor's identity, a non-traveler who is an adult can verify the identify of a disabled person whom the non-traveler is helping. Here, Sherry Wright, Heidi's sister was at the airport as a non-traveler to assist her disabled sister.

The purpose of the screening is to protect travelers from violence and piracy

9

1   aboard aircraft. 49 U.S.C. § 44903(b). Did the TSA screeners think that Ms.

2   Wright was a threat to the other passengers on the plane? If not, she should have

3   been allowed to board the flight.

4   **3.     CALIFORNIA DISABLED PERSONS ACT IS SUFFICIENTLY PLED**

5          In arguing against a right to sue under the California Disabled Persons Act,

6   Defendants try to put Ms. Wright in a Catch-22. Defendants argue, based solely on

7   a 3rd Circuit case, that the Rehabilitation Act is the exclusive remedy for a

8   disability discrimination claim against the federal government. But, then

9   Defendants want Ms. Wright's cause of action under the Rehabilitation Act

10  dismissed, on the grounds that no monetary damages can be recovered.

11         Under the Federal Tort Claims Act, 28 U.S.C. § 2674, the U.S. Government

12  can be sued under the laws of the state where the action took place "in the same

13  manner and to the same extent as a private individual under like circumstances."

14         In this case, California law applies. California has a statutory tort, the

15  California Disabled Persons Act. That law applies here. If the United States was a

16  private individual, then it would be liable under the California Disabled Persons

17  Act, California Civil Code § 54, 54.1. Therefore, the United States can be sued

18  under the California Disabled Persons Act.

19  **4.     NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IS**

20          **SUFFICIENTLY PLED**

21         In arguing to dismiss the negligent infliction of emotional distress,

22  Defendants merely restate their opposition to the intentional infliction of

23  emotional distress cause of action. Defendants ignore, as they did previously, the

24  14 hour bus trip to Phoenix, during which Ms. Wright was not accompanied by

25  anyone, and could not change her diaper, or ask for help from a fellow passenger.

26  She was defenseless during the entire 14 hour trip, which resulted in more damage

27  to Ms. Wright.

28         The Defendants are arguing, again, that Ms. Wright did not suffer enough.

10

Without repeating the prior argument or the outrageous nature of the Defendants' conduct, Ms. Wright suffered enough to come to Court to seek damages.

Therefore, the Court should not dismiss the negligent infliction of emotional distress claim.

## 5. NEGLIGENT HIRING, TRAINING, AND SUPERVISION ARE ALL ADEQUATELY PLED

The discretionary function exception does not apply to any of the causes of action in the Complaint, including negligent hiring, negligent training, and negligent supervision. The Homeland Security Department and the Transportation Safety Administration employees work under statutes and regulations that do not allow for discretion. Instead, who can be hired, who can do training, and who and how someone can do supervision is governed by extensive and detailed statues and regulations.

The main statute is 49 U.S.C. § 44901 et seq. The statutes and regulations were first prepared following the attacks on September 11, 2001, when Congress enacted statutes which gave the Transportation Security Administration the authority to protect the public from violence and piracy aboard aircraft, 49 U.S.C. § 44903(b). See *Corbett v. Transportation Security Administration* 767 F. 3d 1171, 1174 (11th Cir. 2014) *Thomson v. Stone* 2006 WL 770449 (E.D. Mich. 2006)

"The regulations that govern searching of passengers "must, to the maximum extent practicable, require a <u>uniform</u> procedure for searching and detaining passengers and property to ensure safety and <u>courteous treatment</u> of passengers." 49 U.S.C. § 44903(b)(3)." (emphasis furnished). *Bavis v. UAL Corp.* (In Re: September 11 Litig.) 811 F.Supp 2d 883, 885 (S.D. N.Y. 2011).

"Congress created a comprehensive federal scheme to provide for aviation security specifically designed to protect persons and property of passengers

against violence and terrorism. The detailed, comprehensive regulatory security regime sets out a uniform system of duties and requirements, not minimum standards to be interpreted in different ways, in different cases."

*Bavis v. UAL, supra* 811 F. Supp 2d at 893

Thus, the unsupported assertion that the TSA screeners were performing a discretionary function does not comport with the actual statutes and regulations.

Hiring, training, and supervision are all governed under the aforesaid, comprehensive regulatory security regime.

Hiring is regulated by 49 CFR § 1544.405. A screener must have the qualifications described in 49 CFR § 1544.405-1544.411. These are very specific and are not a matter of discretion.

Further, under 49 CFR § 1544.411(d)(3), "Continuing qualifications of screening personnel" a screener has to demonstrate "the current knowledge and skills necessary to <u>courteously</u>, vigilantly, and effectively perform screening functions." (emphasis furnished).

Further, under 49 U.S.C. § 44903, the "regulations to protect passengers and property on an aircraft" "against an act of criminal violence or aircraft piracy" [49 U.S.C. § 44903(b)] "to the maximum extent practicable, require a <u>uniform</u> procedure for searching and detaining passengers to ensure their safety, and <u>courteous</u> and efficient treatment by... Government, State, and local law enforcement personnel carrying out this section." 49 U.S.C. § 44903(b)(3)(A) and (B) (emphasis furnished).

Defendants cite only to general statements in arguing that the discretionary function exception usually covers negligent hiring, training and supervision. But, the facts are different. As set forth above, hiring is strictly regulated by 49 CFR § 1544.405-1544.411.

///

///

12

As in *Milano v. Aguilerra* 2011 WL 662973 (S.D. Cal. February 14, 2011), "Defendants do not point to or discuss the existence or absence of any relevant statute, regulation or guideline, but rely on Vickers, Nurse,  and Gager[4] suggesting that the Claims should be dismissed as a matter of law... None of the three cases applies the discretionary function exception to a negligent retention claim in the summary fashion Defendants advocate."

Earlier, the Court in *Milano, supra* states that "the discretionary element is not met where a federal statute regulation or policy specifically prescribes a cause of action for an employee to follow. If there is such a statute or policy directing mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere to the directive."

That is the case here, hiring, training, and supervision are all set forth in the comprehensive regulations of the Department of Homeland Security, Transportation Security Administration, as set forth above. Therefore, the inquiry comes to an end. There can be no element of discretion under the aforementioned statute, 49 U.S.C. § 44903, and the regulations issued thereunder.

Further, even assuming arguendo that there is an element of judgment, which there is not here, the Court must consider whether that judgment is of the kind that the discretionary function exception was designed to shield, namely only government action and decisions based on considerations of public policy. Here, was the "decision" to relentlessly question Ms. Wright for an hour and 44 minutes, when she could not respond, the kind of "decision" that Congress wanted to protect? There is no evidence that there even was a decision. And there is no evidence that a supervisor was present for the interrogation of Ms. Wright. What policy would Congress want to protect in the interrogation of Ms. Wright?

---

[4]*Vickers v. U.S.* 288 F. 3d 944(9th Cir. 2000) *Nurse v. U.S.* 226 F.3d 996 (9th Cir. 2000) *Gager v. U.S.*  149 F.3d 918 (9th Cir. 1998)

13

Under the statutory scheme of 49 U.S.C. § 44903, there are no decisions to be made based on considerations of public policy.

As in *Milano, supra* Defendants have not cited any authority supporting the proposition that the "discretionary function exception applies to Plaintiff's negligent" hiring, training and supervision claims "as a matter of law." Moreover, as in *Milano, supra* the Defendants have not provided the facts and argument necessary to enable the Court to perform the two step analysis.

As in *Milano, supra* Defendants "have not met their burden of showing that the [discretionary function] exception applies in this case."

None of the cases cited by Defendant applies the discretionary function exception to a negligent hiring, supervision, and training claims in the summary fashion that Defendants advocate.

## 6.   ELAINE DUKE SHOULD NOT BE DISMISSED

For the Rehabilitation Act claim, Elaine Duke[5] is a necessary defendant and should not be dismissed. Because the Rehabilitation Act borrows the remedies, procedures and rights from Title VII of the Civil Rights Act of 1964, *Lopez v. Johnson* 333 F. 3d 959, 961 (9th Cir. 2003) under which the only proper defendant is the head of the department under 42 U.S.C. § 2000e - 16(c), *Vinieratos v. United States* 939 F. 3d 762, 772 (9th Cir. 1991), Elaine Duke was the right person to sue on the Rehabilitation Act claim because she was the head of the Department of Homeland Security

## 7.   IF THE COURT GRANTS ANY PART OF DEFENDANTS' MOTION, LEAVE TO AMEND SHOULD BE GRANTED

Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.

---

[5]On or about December 6, 2017, Kristjen M. Nielsen was sworn in as the new Secretary of Homeland Security. Plaintiff will move for leave to amend to name Ms. Nielsen instead of Ms. Duke.

14

1   *Conley v. Gibson* 335 U.S. 41, 45-46 (1957).

2       Here, Ms. Wright was injured by the Defendants.

3       As set forth above, a federal court may award any <u>available</u> remedy to make

4   good the wrong done. *Bell v. Hood, supra*. Here, there is a wrong, denying Ms.

5   Wright the hour and one-half airplane ride and instead forcing her to sit for 14

6   hours on a bus, unable to speak, unable to change her diaper, and unable to defend

7   herself. In addition to the wrongful demands for an hour and 44 minutes that Ms.

8   Wright speak her name or write it, which her physical condition prevented her

9   from doing, denying Ms. Wright the right to board the airplane resulted in

10  damaging consequences.

11                          **CONCLUSION**

12      The Defendants' conduct was atrocious, outrageous in the bad sense of that

13  word, and beyond the bounds of conduct tolerated in a civilized society. Ms.

14  Wright was damaged by Defendants' wrongful acts.

15      Ms. Wright is entitled to come to Court and seek damages. Defendants are

16  trying to convince the Court otherwise, but their arguments lack merit.

17      To try to eliminate the cause of action for intentional and negligent

18  infliction of emotional distress, Defendants make the same argument twice, that

19  Ms. Wright did not suffer enough. That argument is contrary to the facts.

20      To try to eliminate the causes of action for negligent hiring, training, and

21  supervision, Defendants claim that their actions were social, economic, or political

22  decisions that Congress wanted to protect. But, there was no discretionary

23  function, the Homeland Security Department and the Transportation Security

24  Administration have very strict and comprehensive laws and regulations under

25  which they operate. Defendants' employees had no discretion, and they did

26  nothing that Congress would want to protect.

27      The Court should deny the Defendant's Motion to Dismiss.

28  ///

1   Dated: January 12, 2018          Respectfully submitted,

2

3                         By  /s/ Morris S. Getzels
                             Morris S. Getzels

4                         Morris S. Getzels Law Office
                         Attorney for Plaintiff Heidi Wright

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, Maggie Techner-Werning, declare as follows:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 6047 Tampa Avenue, Suite 307, Tarzana, California 91356-1176. I am employed by a member of the Bar of this Court, at whose direction this service is made.

On **January 12, 2018**, I served the foregoing document described as **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on the parties in this action, by electronic service, a true copy hereof as follows:

| | |
|---|---|
| Jason K. Axe, Esq.<br>Assistant United States Attorney<br>Federal Building, Suite 7516<br>300 North Los Angeles Street<br>Los Angeles, California 90012<br>Telephone: (213) 894-8827<br>Facsimile: (213) 894-7819<br>E-mail: Jason.Axe@usdoj.gov | *Attorney for Defendants* |

**[X ] (BY ELECTRONIC SERVICE)** Based on an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed above. I did not receive, within a reasonable time after the transmission, an electronic message or other indication that the transmission was unsuccessful.

I hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on **January 12, 2018,** at Tarzana, California.

/s/ Maggie Techner-Werning
Maggie Techner-Werning