1  NICOLA T. HANNA
   United States Attorney
2  DOROTHY A. SCHOUTEN
   Assistant United States Attorney
3  Chief, Civil Division
   ROBYN-MARIE LYON MONTELEONE
4  Assistant United States Attorney
   Chief, General Civil Section
5  JASON K. AXE
   Assistant United States Attorney
6  California Bar Number 187101
           Federal Building, Suite 7516
7          300 North Los Angeles Street
           Los Angeles, California 90012
8          Telephone: (213) 894-8827
           Facsimile: (213) 894-7819
9          Email: Jason.Axe@usdoj.gov
   Attorneys for Defendants
10

11                 UNITED STATES DISTRICT COURT

12         FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                     WESTERN DIVISION

14
   HEIDI SUMMER WRIGHT PLATER,          No. CV 17-4297 VAP (JEMx)
15 a/k/a/ HEIDI WRIGHT,
                                        **REPLY BRIEF IN SUPPORT OF**
16              Plaintiff,              **MOTION TO DISMISS PLAINTIFF'S**
                                        **FIRST AMENDED COMPLAINT**
17              v.
                                        **[Fed. R. Civ. P. 12(b)(1), (6)]**
18 THE UNITED STATES OF
   AMERICA, ELAINE DUKE, ACTING         Date:  February 5, 2018
19 SECRETARY OF THE                     Time:  2:00 p.m.
   DEPARTMENT OF HOMELAND               Ctrm:  Courtroom 8A
20 SECURITY, and DOES 1 through 10,            First Street Courthouse
   inclusive,                                  350 West 1st Street
21                                             Hon. Virginia A. Phillips
                Defendants.
22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2

DESCRIPTION                                                                    PAGE

3
I.    PLAINTIFF IS NOT ENTITLED TO MONEY DAMAGES AS TO HER
      REHABILITATION ACT CLAIM ................................................................ 1
4

5
II.   PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR
      INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ........................... 1

6
III.  PLAINTIFF'S CALIFORNIA DISABLED PERSONS ACT CLAIM
      MUST BE DISMISSED ............................................................................ 5
7

8
IV.   PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR
      NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ............................ 6

9
V.    PLAINTIFF'S FIFTH, SIXTH, AND SEVENTH CLAIMS FOR
      NEGLIGENT HIRING, TRAINING, AND SUPERVISION ARE
10    BARRED BY THE DISCRETIONARY FUNCTION EXCEPTION TO
      THE FEDERAL TORT CLAIMS ACT ......................................................... 6
11
      A.    49 U.S.C. § 44903(b) ................................................................ 7
12
      B.    49 C.F.R. §§ 1544.405-1544.411 .............................................. 8
13
      C.    Milano v. Aguilera does not support Plaintiff's assertion that the
14          discretionary function exception does not apply here................... 9

15
VI.   CONCLUSION........................................................................................ 10

16

17

18

19

20

21

22

23

24

25

26

27

28

I.   **PLAINTIFF IS NOT ENTITLED TO MONEY DAMAGES AS TO HER REHABILITATION ACT CLAIM**

In her Opposition, Plaintiff argues that the Supreme Court case of <u>Lane v. Pena</u>, 518 U.S. 187 (1996), "may no longer be good law" and "should be revisited" in light of the Eleventh Circuit case of <u>Sheeley v. MRI Radiology Network, P.A.</u>, 505 F.3d 1173 (11th Cir. 2007). (Opposition at 6-7.)   Nothing in <u>Sheeley</u> calls into question either the holding or the reasoning of <u>Lane</u>, which found that the federal government has not waived its sovereign immunity against monetary damages for violations of Section 504 of the Rehabilitation Act. <u>Lane</u>, 518 U.S. 187. <u>Sheeley</u> neither cites <u>Lane</u>, nor questions the validity of <u>Lane</u> as controlling precedent.  This is not surprising, as <u>Sheeley</u> addresses an issue that is separate and distinct from the issue decided in <u>Lane</u>.  <u>Sheeley</u> involved a Rehabilitation Act claim against a non-federal entity that received federal funding, not a claim against a government entity.  505 F.3d at 1196.  The court in <u>Sheeley</u> thus had no occasion to consider <u>Lane</u> or the issue of remedies against federal entities for violations of the Rehabilitation Act.  <u>Sheeley</u> decided only that the monetary damages available under the Rehabilitation Act against a non-federal entity include compensatory damages for emotional distress, and not that the Rehabilitation Act amounts to a waiver of sovereign immunity by the Federal government for emotional distress damages as Plaintiff contends.  505 F.3d at 1206.  The specific types of monetary damages available against non-federal entities have no bearing on the Supreme Court's decision that no monetary damages of any type are available against the federal government.  Therefore, Plaintiff's Rehabilitation Act claim must be dismissed.

II.  **PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Plaintiff first argues that the TSA employees acted in an extreme and outrageous manner because they did not follow TSA standard operating procedures.  Specifically, Plaintiff argues that she "had the proper identification required" and the TSA employees "should have accepted it."  (Opposition at 7.)

1

1     First, Plaintiff is incorrect that she had "proper identification."  Plaintiff admits

2  that she brought to the airport an expired California identification card.[1]  That document

3  was not valid because it had expired.  (See Opposition, Ex. C; 49 C.F.R. § 1560.3

4  [verifying identity documents must be unexpired]).  Plaintiff also alleges that she

5  brought to the airport a Social Security card and an "original renewal application to the

6  DMV,"[2] but neither of those documents is an acceptable identification document.  (See

7  Opposition, Ex. C.)  Therefore, Plaintiff cannot base her intentional infliction of

8  emotional distress ("IIED") claim on an argument that she had "proper identification"

9  and that TSA "should have accepted it."

10     Second, even if Plaintiff were right that TSA should have accepted the expired and

11  impermissible forms of identification she had, a failure to follow established procedures

12  does not, by itself, establish extreme and outrageous conduct sufficient to state a claim

13  for IIED.  See, e.g., Freeman v. United States, 2014 WL 1117619, at *6 (N.D. Cal. 2014)

14  ("Failure to follow a standard of care, in and of itself, is not extreme and outrageous

15  conduct."); Wayne v. Merritt Motor Co., Inc. v. N.H. Ins. Co., 2011 WL 5025142, at *9

16  (N.D. Cal. 2012) (noting that conduct is not necessarily outrageous simply because it

17  "appears in hindsight to be a mistake"); P.S. v. Scripps Media, Inc., 2017 WL 1534624,

18  at *8 (Cal. Ct. App. 2017) (finding that "a mere mistake (or use of a procedure later

19  determined to be flawed) is not sufficiently 'extreme or outrageous' conduct to support a

20  claim for [IIED]"); Melorich Builders, Inc. v. Superior Court (1984) 160 Cal. App. 3d

21  931, 936–937 (mistaken conduct based on good faith belief conduct was proper not

22  sufficiently "extreme" or "outrageous" to sustain claim for emotional distress).

23     Plaintiff next argues that she has sufficiently alleged an IIED claim because TSA

24  procedures permit passengers without an ID to "still board an airplane" and that the TSA

25

26     _____

27     [1] The card expired on September 28, 2012.  (Opposition, Ex. A.)

     [2] The "original renewal application to the DMV" that Plaintiff references is only a
28  payment receipt for the application fee of $28.00.  (Dkt. 28-2.)  The receipt states that it
     is "not a license or permit" and "not a verified identification."  (Dkt. No. 28-2.)

2

1    employees "made up a requirement that Ms. Wright had to do one of two acts that she
2    physically could not do, say her name or write it down." (Opposition at 7.)   For
3    passengers like Plaintiff who do not present an acceptable form of identification, TSA
4    does provide an alternative process for identity verification.   This alternative process
5    involves a passenger communicating both in writing and verbally as follows: first, the
6    passenger must complete a Certification of Identity form by providing her name,
7    address, and signature; and second, the passenger must verbally answer questions on a
8    phone call with TSA's Identity Verification Call Center.  See 81 Fed. Reg. 78,623,
9    78,624 (Nov. 8, 2016) (explaining the alternative identity verification process); see also
10   Opposition, Ex. C ("In the event you arrive at the airport without valid identification,
11   because it is lost or at home, you may still be allowed to fly. The TSA officer may ask
12   you to complete an identity verification process which includes collecting information
13   such as your name, current address, and other personal information to confirm your
14   identity.")  Given that TSA's alternative identity verification process involves a
15   passenger completing a form in writing and verbally answering questions on a phone
16   call, allegedly asking Plaintiff "repeatedly" if she could say or write her name was
17   neither a "made up" requirement nor extreme and outrageous conduct.

18        Plaintiff next suggests that the conduct of the TSA employees was extreme and
19   outrageous because they could have deviated from their established procedures and
20   permitted her adult sister to verify her identity.  (Opposition at 8 n.3; citing 49 C.F.R.
21   § 1560.105(c)(4).)  Although there is a regulation that provides an exception for minors,
22   Plaintiff has failed to identify any authority that would have allowed TSA employees to
23   ignore established procedures and rely instead on Plaintiff's sister to verify Plaintiff's
24   identity.   Moreover, Plaintiff's unsubstantiated suggestion of another procedure that
25   hypothetically could have been used is irrelevant; neither Plaintiff nor the TSA were free
26   to invent new and different procedures to accommodate Plaintiff's wishes.[3]

27        _____
     [3] Plaintiff cites to a TSA Notification Card that a traveler can print out.
28   (Opposition at 9, Ex. D.)  However, that card merely states that the bearer understands

3

1  As set forth in the motion to dismiss, to state a claim for IIED, a plaintiff must

2  allege actual facts indicating that she suffered extreme emotional distress "of such

3  substantial quality or enduring quality that no reasonable person in civilized society

4  should be expected to endure it." Hughes v. Pair, 46 Cal. 4th 1035 (Cal. 2009)

5  (emphasis added).  Neither Plaintiff's FAC nor her Opposition allege extreme distress of

6  "enduring quality."  She states only that "[t]here does not have to be a lasting disruption

7  to [her] life for her to adequately allege intentional infliction of emotional distress."

8  (Opposition at 9.)   Therefore, Plaintiff has failed to adequately allege that her emotional

9  distress was of an "enduring quality."

10  Instead, Plaintiff stakes the survival of her IIED claim on the sufficiency of her

11  allegations that her emotional distress was of "substantial quality."  In Hughes v. Pair,

12  the California Supreme Court held that a plaintiff's statement that she had suffered

13  "discomfort, worry, anxiety, upset stomach, concern, and agitation" was insufficient to

14  show severe emotional suffering. 46 Cal. 4th 1035, 1051 (2009); see also Wong v. Tai

15  Jing, 189 Cal. App. 4th 1354, 1376 (2010) (emotional upset, lost sleep, stomach upset,

16  general anxiety insufficient); Saari v. Jongordon Corp., 5 Cal. App. 4th 797, 806–07

17  (1992) (complete disruption of life and diagnosis of depression sufficient); Kelly–Zurian

18  v. Wohl Shoe Co., 22 Cal. App. 4th 397, 410 (1994) (anxiety, tightness in chest, heart

19  palpitations, panic attacks, depression, insomnia, and diagnosis of post-traumatic stress

20  disorder sufficient).  Here, Plaintiff alleges only that the efforts by the TSA screeners to

21  confirm her identity led to her crying and sobbing for an hour and forty-four minutes

22

23  that there are alternative procedures for security screening, while acknowledging that the card does not exempt a traveler from screening.  (Opposition, Ex. D.)  Moreover, courts

24  have found that TSA is due some deference in determining its screening procedures.  See Corbett v. TSA, 767 F.3d 1171, 1182 (11th Cir. 2014) (noting United States enjoys

25  flexibility in selecting from among reasonable alternatives for an administrative search and Constitution "does not compel" TSA to use "least invasive" screening procedure or

26  one "fancied" by a passenger); Ruskai v. Pistole, 775 F.3d 61, 77 (1st Cir. 2014) (noting that "choosing which technique best serves the government interest at stake should be

27  left to those with a 'unique understanding of, and responsibility for, limited public resources'" and that review of how TSA conducts searches requires some deference to

28  TSA's "expertise regarding the nature of evolving threats, how people behave in airports, and the capabilities of TSA's workforce and systems.") (citing Corbett)

4

1    while at LAX.  (FAC at ¶ 15.)  This cannot reasonably be characterized as "severe

2    emotional suffering" so as to satisfy the test for establishing intentional infliction of

3    emotional distress.

4         Furthermore, although Plaintiff also alleges that she suffered "severe and extreme

5    emotional distress, mental anguish, mortification, humiliation, embarrassment and

6    shame," (FAC at ¶ 33.), these conclusory allegations are insufficient to show that the

7    distress she suffered was of such substantial or enduring quality that no reasonable

8    person in civilized society should be expected to endure it.  Accordingly, Plaintiff's

9    intentional infliction of emotional distress claim should be dismissed.  See Ashcroft v.

10   Iqbal, 556 U.S. 662, 678 (2009).

11   **III.  PLAINTIFF'S CALIFORNIA DISABLED PERSONS ACT CLAIM MUST**

12        **BE DISMISSED**

13        In her Opposition, Plaintiff argues that because the California Disabled Persons

14   Act ("CDPA") applies to private individuals, the United States should be liable under

15   that act pursuant to the Federal Tort Claims Act.  (Opposition at 10.)  However,

16   Plaintiff's Opposition fails to establish that the United States has waived its sovereign

17   immunity as to claims brought against it pursuant to the CDPA.

18        The FTCA provides that the United States shall be liable, "respecting the

19   provisions of this title relating to tort claims, in the same manner and to the same extent

20   as a private individual under like circumstances."  28 U.S.C. § 2674 (emphasis added).

21   Here, Plaintiff's claim under the CDPA is not a tort claim.  Instead, it is a statutory claim

22   alleging discrimination based on Plaintiff's handicap.  (FAC at ¶¶ 38-42.)  Therefore, the

23   FTCA does not provide Plaintiff with a waiver of sovereign immunity permitting her to

24   advance that claim against the United States.

25        Even if Plaintiff's CDPA claim arguably fell under the provisions of the FTCA,

26   because that claim is in effect one for discrimination, mirroring her Rehabilitation Act

27   claim, it is subject to dismissal because the Rehabilitation Act provides the exclusive

28   remedy for a disability discrimination claim against the federal government.  See Spence

5

1    v. Straw, 54 F.3d 196, 202, 203 (3d Cir. 1995); accord Boyd v. U.S. Postal Serv., 752

2    F.2d 410, 413 (9th Cir. 1985) (Rehabilitation Act serves as the exclusive remedy for

3    discrimination in employment on the basis of disability by federal agencies).  Therefore,

4    Plaintiff's third claim should be dismissed.

5    **IV.**    **PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR NEGLIGENT**

6         **INFLICTION OF EMOTIONAL DISTRESS**

7         In her Opposition, Plaintiff argues that in moving to dismiss her negligent

8    infliction of emotional distress claim, the United States has ignored the facts alleged

9    regarding her bus trip to Phoenix.  (Opposition at 10-11.)  Although Plaintiff alleges that

10   she suffered emotional distress during her bus trip to Phoenix, she has failed to allege

11   facts to support her contention that the United States was either the but-for or proximate

12   cause of her having to travel to Phoenix by bus.  Plaintiff does not allege that a

13   government employee required Plaintiff to travel by bus to Phoenix or advised her to

14   travel to Phoenix in that manner.  Moreover, Plaintiff has failed to allege that any

15   government employee knew that if Plaintiff were not let through security, she would be

16   forced by her sister to endure a 14 hour trip by bus to Phoenix.  Therefore, Plaintiff's

17   negligent infliction of emotional distress claim must be dismissed.

18   **V.**    **PLAINTIFF'S FIFTH, SIXTH, AND SEVENTH CLAIMS FOR**

19        **NEGLIGENT HIRING, TRAINING, AND SUPERVISION ARE BARRED**

20        **BY THE DISCRETIONARY FUNCTION EXCEPTION TO THE**

21        **FEDERAL TORT CLAIMS ACT**

22        In her Opposition, Plaintiff cites to 49 U.S.C. § 44903(b) and 49 C.F.R.

23   §§ 1544.405 – 1544.411 as purportedly having mandatory provisions that preclude the

24   assertion of the discretionary function exception as to Plaintiff's claims for negligent

25   hiring, training, and supervision.  (Opposition at 11-12.)  However, Plaintiff has failed to

26   cite any specific mandatory provision that was violated by the United States in the

27   hiring, training, or supervision of its employees.  Moreover, a review of the cited statute

28   and regulation demonstrates that neither has mandatory language that would preclude

1    assertion of the discretionary function exception.

2        **A.    49 U.S.C. § 44903(b)**

3        49 U.S.C. § 44903(b) requires the Under Secretary of Transportation for Security

4    to "prescribe regulations to protect passengers and property on an aircraft" against

5    criminal violence or aircraft policy.  49 U.S.C. § 44903(b).  In prescribing those

6    regulations, the Under Secretary is required to (a) consult with various heads of

7    government departments and agencies, (b) consider whether a proposed regulation is

8    consistent with protecting passengers and the public interest, (c) require to the maximum

9    extent practicable a uniform procedure for searching and detaining passengers, and

10   (d) consider the extent to which a proposed regulation will carry out this section.  Id.

11       In her Opposition, Plaintiff cites to Section 44903 as containing no "discretion,"

12   however she fails to identify what specific section was violated in the hiring, training, or

13   supervision of TSA's employees.  (See Opposition at 12-13.)  Although Plaintiff's

14   Opposition quotes Section 44903(b)(3) and underlines the words "uniform" and

15   "courteous treatment," she has failed to establish how that section or those words create

16   a mandatory hiring, training, or supervision policy that was violated by the United

17   States.  Indeed, in the portion quoted by Plaintiff, it states that the "uniform" procedure

18   is required "to the maximum extent practicable."  Id. § 44903(b).  That phrase alone

19   establishes that discretion is involved in the creation of a procedure for searching and

20   detaining passengers. [4]  Regardless, nothing in Section 44903(b) connects Plaintiff's

21   assertions to a specific claim of negligent hiring, training, or supervision by setting forth

22   a specific, mandatory course of action with regard to how to hire, train, or supervise a

23   TSA screener.  Rather, it merely addresses the creation of procedures for searching and

24   detaining passengers, which is not at issue in this case.

25       Whether TSA had discretion in establishing identity verification and screening

26

27   _____
     [4] See, e.g., Elec. Privacy Info. Ctr. v. DHS, 653 F.3d 1, 3 (D.C. Cir. 2011) ("The
28   Congress generally has left it to [TSA] to prescribe the details of the screening
     process[.]").

                                        7

procedures, or whether the TSA employees with whom Plaintiff interacted had discretion
in applying those procedures, is inapposite to Plaintiff's claims; the issue is whether TSA
had discretion with regard to the manner in which it hired, trained, and supervised its
employees.  On this issue, courts have repeatedly found that TSA's hiring, training, and
supervision of screening employees involves the exercise of vast discretion.  See, e.g.,
Am. Fed'n of Gov't Emps. Local 1 v. Stone, 502 F.3d 1027, 1030 (9th Cir. 2007)
(noting that Congress gave the TSA Administrator "significant discretion over the
employment of security screeners"); Conyers v. Merit Sys. Prot. Bd., 388 F.3d 1380,
1383 (Fed. Cir. 2004) (quoting a House of Representatives conference report stating that
"in order to ensure that Federal screeners are able to provide the best security possible,
the Secretary [of Homeland Security] must be given wide latitude to determine the terms
of employment of screeners").

Therefore, Section 44903(b) does not preclude the assertion by the United States
of the discretionary function exception to the FTCA.  Cf. Hekmat v. TSA, 247 F. Supp.
3d 427, 437-38 (S.D.N.Y. 2017) ("plaintiffs' failure to supervise claim is barred by the
discretionary function exception; TSA's degree of supervision and its hiring procedures
are discretionary acts, and neither party has pointed to a regulation or statute that
compels the TSA to follow certain procedures that would be relevant here. The TSA's
oversight and hiring procedures also clearly involve matters of public policy); Amberg–
Blyskal v. TSA, 2011 WL 4470883, at *2 n.2 (E.D. Penn. 2011) (dismissing failure-to-
supervise claim against TSA in connection with stolen jewelry as falling under the
discretionary exception function).

**B.    49 C.F.R. §§ 1544.405-1544.411**

Plaintiff also points to 49 C.F.R. §§ 1544.405 – 1544.411 as purportedly
containing mandatory requirements for the hiring, training, and supervision of TSA
employees.  (See Opposition at 12-13.)   Plaintiff is wrong that these provisions have any
bearing.  These regulations set out qualifications and training and testing requirements
for screening personnel at airports where an aircraft operator is responsible for

8

1    conducting security screening.  These regulations have no applicability to TSA or its

2    employees.  See 49 C.F.R. § 1544.401 (specifying that §§ 1544.401 – 1544.411 apply

3    only "when the aircraft operator is conducting" security screening rather than TSA

4    conducting screening); see also 49 C.F.R. § 1544.207(b)-(c) (distinguishing between

5    locations where TSA is responsible for security screening and locations where an aircraft

6    operator is responsible for screening).  Therefore, nothing about 49 C.F.R. §§ 1544.405 –

7    1544.411 precludes the assertion by the United States of the discretionary function

8    exception to the FTCA.[5]

9          **C.    Milano v. Aguilera does not support Plaintiff's assertion that the**

10              **discretionary function exception does not apply here.**

11          Plaintiff relies on Milano v. Aguilera, 2011 WL 662973 (S.D. Cal. 2011), to argue

12   that her negligent hiring, training, and supervision claims should not be dismissed.  That

13   reliance is misplaced.  Unlike this case, the plaintiff in Milano asserted a negligent

14   retention claim based on an allegation that an employee was retained following a

15   complaint about his behavior even though the employer knew that he had a prior track

16   record of sexually harassing female employees.  There is no such claim and no such

17   allegation here.  Also unlike this case, the defendants in Milano did "not point to or

18   discuss the existence or absence of any relevant statute, regulation or guideline."  Id. at

19   6.  Here, Defendant United States has cited ample authority establishing that the

20   discretionary function exception applies to bar Plaintiff's claims.  Defendant has also

21   pointed to the absence of any allegation in the FAC or the Opposition that a specific,

22

23   ───────────────
     [5] Congress has established some requirements for the hiring and training of TSA
     screening employees.  See 49 U.S.C. § 44935.  Although not cited by Plaintiff in her
     Opposition, Section 44935(f)(5) has provisions that are similar to 49 C.F.R.
24   § 1544.411(d)(3).  Specifically, Section 44935(f)(5) provides that screeners are to
     receive annual evaluations, and they are not to continue to perform screening functions
25   unless the evaluation shows that the individual "demonstrates the current knowledge and
     skills necessary to courteously, vigilantly, and effectively perform screening functions."
26   49 U.S.C. § 44935(f)(5).  However, nothing in Section 44935(f)(5) connects Plaintiff's
     assertions to a specific claim of negligent hiring, training, or supervision, nor eliminates
27   TSA's discretion in hiring, training, and supervision of its employees.  Am. Fed'n of
     Gov't Emps. Local, 502 F.3d at 1030.  It merely addresses the creation of a procedure
28   for conducting an annual evaluation of screeners.

1    mandatory course of action set forth in a statute, regulation, or policy was not followed.

2    Therefore, Plaintiff's fifth, sixth, and seventh claims should be dismissed.

3    **VI.**    <u>**CONCLUSION**</u>

4        For the foregoing reasons, this Court should grant Defendants' motion to dismiss.

5

6    Dated: January 25, 2018          Respectfully submitted,

7                                    NICOLA T. HANNA
                                     United States Attorney

8                                    DOROTHY A. SCHOUTEN
                                   Assistant United States Attorney

9                                    Chief, Civil Division
                                   ROBYN-MARIE LYON MONTELEONE

10                                  Assistant United States Attorney
                                 Chief, General Civil Section

11

12                                     /s/ *Jason K. Axe*
                                   JASON K. AXE

13                                  Assistant United States Attorney
                                 Attorneys for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28