FILED
CLERK, U.S. DISTRICT COURT

2/16/2018

CENTRAL DISTRICT OF CALIFORNIA
BY:_____BH_____DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Heidi Summer Wright Plater a.k.a
Heidi Wright,

                 Plaintiff,

      v.

United States of America, et al.,

            Defendants.

17-cv-04297 VAP (JEMx)

**Order Granting in Part, Denying in Part, Defendants' Motion to Dismiss (Doc. No. 26)**

On December 4, 2017, Defendants United States of America and Acting Secretary of Homeland Security Elaine Duke[1] (collectively "Defendants") filed a Motion to Dismiss Plaintiff Heidi Summer Wright Plater a.k.a Heidi Wright's ("Plaintiff") First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) ("Motion").  (Doc. No. 26).  On January 12, 2018, Plaintiff filed her opposition to Defendants' Motion.  (Doc. No. 28).  Defendants filed their Reply in Support of their Motion on January 25, 2018.  (Doc. No. 35).

After considering the papers filed in support of, and in opposition to, the Motion, the Court Grants the Motion in part and denies the Motion in part.

---

[1] Plaintiff notes that on or about December 6, 2017, Kristjen M. Nielsen was sworn in as the new Secretary of Homeland Security, and that Plaintiff plans on moving to amend her complaint to name Ms. Nielsen instead of Ms. Duke. (Doc. No. 28 at 18 n.5).

United States District Court
Central District of California

# I.   BACKGROUND

Plaintiff alleges the following facts in her First Amended Complaint (Doc. No. 19) ("FAC").

Plaintiff suffered strokes in 2004 and 2007 that caused multiple physical disabilities.  (FAC at ¶¶5, 11).  Plaintiff is unable to walk, and is confined to a wheelchair.  (FAC at 11).  While she can understand what a person says to her, she cannot respond verbally.  (FAC at ¶5).  Since she is right-handed, and her strokes have affected the right side of her body, Plaintiff cannot hold a pen to write.  (FAC at ¶11).  She communicates with others by nodding or shaking her head.  (FAC at ¶5).

Plaintiff suffers from several other medical conditions including diabetes, incontinence, hypertension, coronary artery disease, chronic ischemic heart disease, and sick sinus syndrome.  (FAC at ¶11).

In March 2014, Plaintiff's sister, Chantel Bonet, made arrangements for Plaintiff to move from a skilled nursing facility in Los Angeles to a residential facility for disabled persons in Arizona.  (FAC at ¶18).  Bonet moved to Arizona herself, arranged for Plaintiff's new residence, and transferred Plaintiff's Medicare/Medicaid payments from California to Arizona.  (FAC at ¶18).  Because Plaintiff's California Medicare/Medicaid payments were terminated effective March 31, 2014, Plaintiff had to move to Arizona by April 1, 2014 so the State of Arizona would pay for Plaintiff's living facility. (FAC at ¶18).

It appears that in advance of her April 1, 2014 flight, Plaintiff did not have any other form of photo identification apart from a California Identification Card that had expired on September 28, 2012.  (See FAC at ¶¶19, 12).  On March 20, 2014, Bonet wrote to the California Department of Motor Vehicles to request a renewal of Plaintiff's identification card.  (FAC at ¶19).  Plaintiff's other sister, Sherry Wright, took her to the California Department of Motor Vehicles on March 31, 2014, and received a receipt for an application for an identification card renewal.  (FAC at ¶19).

On March 25, 2014, Bonet wrote to executives of Southwest, Delta, American, and United, requesting assistance for Plaintiff at the Los Angeles Airport ("LAX").  (FAC at ¶20).  Bonet also tried to contact the Transportation Security Administration's "TSA Cares" department to prepare Plaintiff for her April 1, 2014 flight.  (FAC at ¶20).  Bonet placed calls to TSA Cares on March 25, 26, 27 and 30, but did not receive assistance.  (Id.).  Bonet finally left a telephone message with TSA Cares Supervisor Karen Hennigan on March 31, 2014, asking for the appropriate steps Plaintiff would need to take to board a flight on April 1, 2014.  (Id.).  Hennigan did not return Bonet's phone call.  (Id.).

With Wright's assistance, Plaintiff went to LAX the evening of April 1, 2014 so she could take Southwest Airlines Flight 1015 for Phoenix, Arizona.  (FAC at ¶12).  At the airport, Plaintiff attempted to get through TSA security screening by presenting her expired California Identification Card, the receipt for application for a new identification card, and her Social Security card.  (FAC at ¶12).

TSA employees Sandra Vences and Pablo Paiva were responsible for screening passengers for Plaintiff's flight.  (FAC at ¶¶15, 17).  They refused to accept Plaintiff's proffered forms of identification, and did not allow Plaintiff to pass through the TSA security screening.  (FAC at ¶13).

Between 8:00 p.m. and 9:44 p.m., Vences and Paiva repeatedly asked Plaintiff to either say or write her name to identify herself.  (FAC at ¶15).  They made it clear to Plaintiff that if she did not write or say her name, she would not be allowed to board her flight.  (FAC at ¶15).  Plaintiff tried to say her name, but because of her disability, she could only make garbled sounds.  (FAC at ¶15).  Neither could Plaintiff hold a pen to write her name. (FAC at 15).  Plaintiff was reduced to tears and remained crying while Vences and Paiva continued to demand that Plaintiff write or say her name. (FAC at ¶15).  Vences and Paiva did not let Plaintiff board her flight, which departed at 9:55 p.m.  (FAC at ¶16).

After Plaintiff had missed her flight, her sister made arrangements for Plaintiff to travel alone by bus to Phoenix.  (FAC at ¶21).  The bus ride was long and uncomfortable.  (Id.).

## II.    LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b)(1).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss an action if the court lacks jurisdiction over the subject matter

of the suit.  Fed. R. Civ. P. 12(b)(1).  The party seeking to invoke federal jurisdiction bears the burden of establishing that jurisdiction exists.  Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986).  A complaint will be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction if (1) the cause does not "arise under" any federal law or the United States Constitution, (2) there is no "case or controversy" within the meaning of that constitutional term, or (3) the cause is not one described by any jurisdictional statute. Baker v. Carr, 369 U.S. 186, 198 (1962).  Rule 12(b)(1) is the proper avenue to argue that a claim is barred by the sovereign immunity doctrine.  See Wright & Miller, 5B Federal Practice & Procedure: Civil 3d, § 1350 at 79 (2004).

### B.  Fed. R. Civ. P. 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief.  Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require a plaintiff to provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (quoting Fed. R. Civ. P. 8(a)(2))); Bell Atl. Corp. v Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe

United States District Court
Central District of California

5

v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court."  Schwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of her 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations

that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F. 3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

### III.    DISCUSSION

Defendants move to dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  (See Doc. No. 26 at 8).  The Court addresses Defendants' arguments below.

#### A.  Defendants Assert that the Court Lacks Subject Matter Jurisdiction for Plaintiff's First, Third, Fifth, Sixth, and Seventh Claims.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983).  "'A waiver of sovereign immunity cannot be implied but must be unequivocally expressed.'" Tobar v. United States, 639 F.3d 1191, 1195 (9th Cir. 2011) (quoting United States v. Mitchell, 463 U.S. at 538).  Typically, only Congress may waive sovereign immunity.  See, Tobar, 639 F.3d at 1195 (finding that an SEC regulation and

a letter from the United States embassy could not effect a waiver of sovereign immunity since they were not acts of Congress); Goble v. Ward, 628 F. App'x 692, 698 (11th Cir. 2015) ("[O]nly Congress can waive an agency's sovereign immunity.").  The burden to show that sovereign immunity has been waived is on the party bringing suit.  Beals v. U.S. Dep't of Justice, 460 F. App'x 773, 775 (10th Cir. 2012).

Defendants seek dismissal of Plaintiff's First and Third Claims on the basis that there has been no waiver of sovereign immunity.  (Doc. No. 26 at 8, 11, 17-18).  Defendants also seek dismissal of Plaintiff's Fifth, Sixth, and Seventh Claims on the ground that the Discretionary Function exception applies to the Federal Tort Claims Act's waiver of sovereign immunity.  (Doc. No. 26 at 21-24).  Defendants also argue that the Court lacks subject matter jurisdiction over Defendant Duke.  (Doc. No. 26 at 12 n.4, 19 n.5, 21, n.6). The Court addresses these jurisdictional arguments below.

### 1.     There Has Been No Waiver of Sovereign Immunity for Emotional Distress Damages Brought Pursuant to the Rehabilitation Act.

Plaintiff's first claim is for violation of the Rehabilitation Act, 29 U.S.C. § 794.  (FAC at ¶¶23-28).  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

United States District Court
Central District of California

Defendants argue that since Plaintiff only seeks monetary damages, her claim must be dismissed because <u>Lane v. Pena</u>, 518 U.S. 187 (1996) has clarified that the federal government has not waived its sovereign immunity against monetary damages for violations of Section 504 of the Rehabilitation Act.  (Doc. No. 26 at 11).

The plaintiff in <u>Lane v. Pena</u>, James Lane, was a student in the United States Merchant Marine Academy.  518 U.S. at 189.  After Lane was diagnosed with diabetes mellitus, the Academy found him to be ineligible for service.  <u>Id.</u>  Lane sued, alleging that the Academy had violated Section 504 of the Rehabilitation Act.  <u>Id.</u> at 190.  Lane sought reinstatement to the Academy, compensatory damages, attorney's fees, and costs.  <u>Id.</u>

Lane argued that since Section 505(a)(2) of the Rehabilitation Act incorporates by reference the remedies available in Title VI of the Civil Rights Act of 1964, and because Title VI of the Civil Rights Act of 1964 included compensatory damages, these statutory provisions together constituted a waiver of the Federal Government's sovereign immunity against compensatory damages.  <u>Id.</u> at 191.  The United States Supreme Court disagreed.  After analyzing the statutory scheme, the Supreme Court found that Congress had not waived the Federal Government's immunity against monetary damages awards "beyond the narrow category of Section 504(a) violations committed by federal funding agencies acting as such . . . ."  <u>Id.</u> at 193.  The Court observed that "the only 'remedies' provision directly addressed to Section 504 violations . . . has done so in a way that suggests that it did not in fact intend to waive the Federal Government's sovereign

United States District Court
Central District of California

immunity against monetary damages awards for Executive agencies' violations of § 504(a)." Id. at 197.

Plaintiff argues that the Eleventh Circuit's opinion in Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1196 (11th Cir. 2007) calls into question the applicability of Lane v. Pena to this case.  (Doc. No. 28 at 10-11).  In Sheeley, the disabled plaintiff brought a claim under Section 504 of the Rehabilitation Act against MRI Radiology Network, P.A., a federal funding recipient, for failing to accommodate the use of her guide dog.  505 F.3d at 1178-81.  The Eleventh Circuit found that Section 504 of the Rehabilitation Act permitted plaintiff to seek emotional distress damages against the non-federal agency defendant.  Id. at 1190-1204.  It did not address whether Congress waived sovereign immunity to permit such lawsuits against a federal agency, as was the case in Lane v. Pena and the case here.  Nor did Sheeley draw a distinction between emotional distress damages and compensatory damages.  Id. at 1198 ("Emotional damages are plainly a form of compensatory damages . . . .").  In short, Sheeley does not support Plaintiff's assertion that she can seek emotional distress damages from a federal agency.

The Court finds that the government has not waived its sovereign immunity against emotional distress damages for the Defendants' alleged violation of Section 504 of the Rehabilitation Act.  Accordingly, Plaintiff's First Claim for disability discrimination is DISMISSED for lack of subject matter jurisdiction.

**2.      The FTCA Waives Sovereign Immunity for Plaintiff's Third Claim Brought Pursuant to the California Disabled Persons Act.**

Plaintiff's third claim is for violation of the California Disabled Persons Act ("CDPA"). (Doc. No. 1 at 10-11, ¶¶38-42).  Defendants argue that this claim is also barred by sovereign immunity.  (Doc. No. 35 at 7-8).

The Federal Tort Claims Act, 28 U.S.C. 2674 ("FTCA") waives sovereign immunity for claims brought against the United States of America "respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. 2674.  Plaintiff argues that this provision waives sovereign immunity for her CDPA claim.  (Doc. No. 28 at 14).

Defendants argue, citing no authority, that this provision of the FTCA does not waive sovereign immunity for Plaintiff's CDPA claim because "Plaintiff's claim under the CDPA is not a tort claim."  (Doc. No. 35 at 7). The Court finds that Plaintiff's CDPA claim is best understood as a statutory tort.  See Wilkins-Jones v. Cty. of Alameda, No. C-08-1485 EMC, 2011 WL 3652495, at *7 (N.D. Cal. Aug. 19, 2011), order vacated in part, No. C-08-1485 EMC, 2012 WL 3116025 (N.D. Cal. July 31, 2012) (finding that "[t]he character of [the plaintiff's] CDPA claims . . . sounds in tort" where the statute required a showing of harm, and the compensation sought related to the harm); BLACK'S LAW DICTIONARY (10th ed. 2014) ("TORT, 1. A civil wrong, other than breach of contract, for which a remedy may be obtained, usu. in the form of damages; a breach of a duty that the law imposes on persons who stand in a particular relation to one another.").  The Court thus

finds that the FTCA has waived sovereign immunity for Plaintiff's CDPA claim.  The Court DENIES Defendants' Motion to Dismiss Plaintiff's Third Claim.[2]

### 3.   The Discretionary Function Exception to the FTCA's Waiver of Sovereign Immunity Applies to Plaintiff's Fifth, Sixth, and Seventh Claims.

The FTCA waives the Government's sovereign immunity to tort claims and provides exceptions for claims where immunity is not waived.  See Mundy v. U.S., 983 F.2d 950, 952 (9th Cir. 1993).  "When a claim falls within a statutory exception to the FTCA's waiver of sovereign immunity, the court is without subject matter jurisdiction to hear the case," and will dismiss the

---

[2] Defendants also argue that the Rehabilitation Act preempts the CDPA.  (Doc. No. 26 at 18; Doc. No. 35 at 7-8).  The cases cited by Defendants, however, stand for the more limited proposition that Section 504 of the Rehabilitation Act preempts claims related to employment discrimination by federal agencies.  See, e.g., Boyd v. U.S. Postal Serv., 752 F.2d 410, 413 (9th Cir. 1985) (finding that the Rehabilitation Act "is the exclusive remedy for discrimination in employment by the Postal Service on the basis of handicap.") (emphasis added).  It is Defendants' burden to show that the Rehabilitation Act preempts state law disability claims brought outside of the employment context.  City of Los Angeles v. AECOM Servs., Inc., 854 F.3d 1149, 1161 (9th Cir.), amended sub nom. City of Los Angeles by & through Dep't of Airports v. AECOM Servs., Inc., 864 F.3d 1010 (9th Cir. 2017), and cert. denied sub nom. Tutor Perini Corp. v. City of Los Angeles, Cal., 138 S. Ct. 381 (2017) ("States have historically regulated in the area of civil rights generally, and in the field of discrimination against disabled individuals specifically . . . . We therefore apply the presumption against preemption, and, accordingly, will find preemption only if Congress indicated a clear and manifest purpose to that effect.") (internal quotation marks removed).  Here, Plaintiff has not alleged that she faced discrimination as a federal employee or an applicant for a federal job.  Instead, Plaintiff is a private person suing for discrimination of a federal agency outside the employment context.  See Gibson v. Henderson, 129 F. Supp. 2d 890, 903 (M.D.N.C. 2001) ("The Rehabilitation Act is not the exclusive method of recovery for private entities such as federal contractors and thus does not preempt similar or related state law claims for such entities.").  The Court finds that Defendants have failed to rebut the presumption against preemption in this context.

claim under Rule 12(b)(1).  Id.  It is the Government's burden to show the discretionary function exception applies, reversing the usual rule that the party seeking to invoke jurisdiction bears the burden of showing it exists.  Reed ex rel Allen v. U.S. Dep't of Interior, 231 F.3d 501, 504 (9th Cir. 2000); Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986).  "'[A] plaintiff must advance a claim that is facially outside the discretionary function exception in order to survive a motion to dismiss[,]'" however.  Doe v. Holy See, 557 F.3d 1066, 1084 (9th Cir. 2009) (quoting Prescott v. United States, 973 F.2d 696, 702 n. 4 (9th Cir.1992)).

Where the actions of a government employee fall within the discretionary function exception to the waiver of absolute immunity provided by the FTCA, the Court lacks jurisdiction.  See 28 U.S.C. § 2680(a).  The "discretionary function" provision of the FTCA renders the United States of America not liable for:

> [a]ny claim based upon an act or omission of an employ-
> ee of the Government, exercising due care, in the execu-
> tion of a statute or regulation, whether or not such statute
> or regulation be valid, or based upon the exercise or per-
> formance or the failure to exercise or perform a discre-
> tionary function or duty on the part of a federal agency or
> an employee of the Government, whether or not the dis-
> cretion involved be abused.

28 U.S.C. § 2680(a).

United States District Court
Central District of California

A discretionary action must fulfill two conditions (1) the act in question must "involv[e] an element of judgment or choice" and (2) that judgment must be "the kind that the discretionary exception was designed to shield." United States v. Gaubert, 499 U.S. 315, 322–23, (1991) (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)).  "[T]he purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  Id. at 323 (internal quotation marks removed).

"'An agency does not retain discretion whether to act where a statute or policy directs mandatory and specific action and the agency has no lawful option but to adhere to the directive.'"  Keiper v. Victor Valley Transit Auth., No. EDCV 15-00703 BRO (SPx), 2016 WL 6562067, at *6 (C.D. Cal. Feb. 1, 2016) (quoting Tobar v. United States, 731 F.3d 938, 946 (9th Cir. 2013)). The conduct underlying Plaintiff's fifth, sixth, and seventh claims is Defendants' alleged failure to hire, train, and supervise Vences and Paiva properly as security screeners for the TSA.  (Complaint at ¶¶51, 55, 58). The statute governing the employment standards and training for airport security personnel is 49 U.S.C.A. § 44935.  Although this statute contains certain mandatory minimum requirements, it leaves a large amount of discretion to those charged with hiring, training, and supervising employees such as Vences and Paiva.  See, e.g., 49 U.S.C.A. § 44935 (e)(3) ("The Under Secretary [of Transportation for Security] shall also review, and revise as necessary, any standard, rule, or regulation governing the employment of individuals as security screening personnel."); see also, Hekmat v. U.S. Transportation Sec. Admin., 247 F. Supp. 3d 427, 437–38 (S.D.N.Y. 2017)

("[T]he TSA's degree of supervision and its hiring procedures are discretionary acts.").

In opposition to Defendants' Motion, Plaintiff argues that certain other statutes and regulations "do not allow for discretion" in the hiring, training, and supervision of TSA employees.  (Doc. No. 28 at 15-18). These statutes and regulations are inapposite.  Plaintiff points to 49 U.S.C. § 44903(b)(3), which provides guidelines for the screening of airline passengers.  (Doc. No. 28 at 15-16).  This is not the conduct underlying Plaintiff's fifth, sixth, and seventh claims, and the statute clearly contemplates an element of discretion.  49 U.S.C.A. § 44903 (b)(3) ("**[T]o the maximum extent practicable**, require a uniform procedure for searching and detaining passengers and property to ensure--(A) their safety; and (B) courteous and efficient treatment by an air carrier, an agent or employee of an air carrier, and Government, State, and local law enforcement personnel carrying out this section . . . .") (emphasis added).  Plaintiff's citation to 49 CFR 1544.401-411 is similarly unavailing, since it only applies to security screeners hired by aircraft operators, not TSA employees.  See 49 C.F.R. § 1544.401 ("This subpart applies when the aircraft operator is conducting inspections as provided in § 1544.207."); 49 C.F.R. § 1544.207 (distinguishing between locations where the TSA conducts security screening and locations where the aircraft operators are responsible for security screening).

Since Defendants have met their burden to show that the conduct underlying Plaintiff's fifth, sixth, and seventh claims involved an element of

United States District Court
Central District of California

judgment or choice, the Court next determines whether this judgment was

the kind that the discretionary function exception was designed to shield.

The Ninth Circuit has repeatedly held this to be the case.  Cloes v. City of

Mesquite, 582 F. App'x 721, 727 (9th Cir. 2014) ("'This court and others

have held that decisions relating to the hiring, training, and supervision of

employees usually involve policy judgments of the type Congress intended

the discretionary function exception to shield.'") (quoting Vickers v. United

States, 228 F.3d 944, 950 (9th Cir.2000)).  Courts that have examined the

judgment required for the hiring, supervision, and training of TSA employees

are in accord.  See, e.g., Hekmat v. U.S. Transportation Sec. Admin., 247 F.

Supp. 3d 427, 437–38 (S.D.N.Y. 2017) ("The TSA's oversight and hiring

procedures also clearly involve matters of public policy."); Amberg-Blyskal v.

Transportation Sec. Admin., No. CIV.A. 10-06818, 2011 WL 4470883, at *2

n.2 (E.D. Pa. Sept. 26, 2011) (same).

This Court finds that Defendants are entitled to discretionary immunity

for this alleged conduct.  Accordingly, the Court GRANTS Defendants'

Motion with regards to Plaintiff's Fifth, Sixth, and Seventh claims for lack of

subject matter jurisdiction.


## B.  The FTCA Does Not Confer Jurisdiction Over Defendant Duke.

Defendant Elaine Duke was the acting Secretary of the Department of

Homeland Security at the time Plaintiff filed her lawsuit.  (See Doc. No. 19 at

3, ¶7).  Defendants seek dismissal of Plaintiff's second, fourth, fifth, sixth,

and seventh claims against Defendant Elaine Duke since the FTCA does

not confer jurisdiction over a defendant other than the United States of

America.  (Doc. No. 26 at 12 n.4, 19 n.5, 21, n.6).  In opposition, Plaintiff makes no argument that Duke was a proper defendant for these claims. (See Doc. No. 28 at 18 (arguing that Duke was a necessary defendant for Plaintiff's Rehabilitation Act claim)).

The FTCA only confers jurisdiction over the United States of America, not federal agencies or those in charge of such agencies.  28 U.S.C. § 2679(a); Kocol v. United States, 670 F. App'x 489, 490 (9th Cir. 2016) ("'The United States is the only proper defendant in an FTCA action.'") (quoting Lance v. United States, 70 F.3d 1093, 1095 (9th Cir. 1995)); Epstein v. United States, No. CV-16-02929-BAS (WVG), 2017 WL 4227054, at *2 (S.D. Cal. Sept. 21, 2017) (dismissing FTCA claims brought against the Department of Veterans Affairs and former VA Secretary Robert McDonald since "jurisdiction is only proper over the United States").

Accordingly, the Court DISMISSES Plaintiff's second, fourth, fifth, sixth, and seventh claims for lack of subject matter jurisdiction to the extent that they are brought against Duke.

### C. Plaintiff Has Not Alleged Sufficient Facts to State a Claim for Intentional Infliction of Emotional Distress.

A claim for Intentional Infliction of Emotional Distress ("IIED") requires a showing of the following: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe

United States District Court
Central District of California

or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  <u>Christensen v. Superior Court</u>, 54 Cal. 3d 868, 903 (1991) (internal quotations and citation omitted).

"Extreme and outrageous conduct" generally "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, but only to conduct so extreme and outrageous as to go beyond all possible bonds of decency."  <u>Ankeny v. Lockheed Missiles & Space Co.</u>, 88 Cal. App. 3d 531, 537 (1979) (citation omitted) (affirming demurrer with respect to claim for intentional infliction of emotional distress); <u>Braunling v. Countrywide Home Loans Inc.</u>, 220 F.3d 1154, 1158 (9th Cir. 2000) ("Conduct which exhibits mere rudeness and insensitivity does not rise to the level required for a showing of intentional infliction of emotional distress.").

Here, Plaintiff alleges that TSA employees Sandra Vences and Pablo Paiva intentionally caused her emotional distress by repeatedly asking her to write or say her name to identify herself when Plaintiff's disability plainly prevented her from doing so.  (Complaint at ¶¶15, 35).  This conduct, while insensitive to Plaintiff, is not so extreme as to exceed all bounds of that usually tolerated in a civilized community.  Vences and Paiva's "conduct did not include threats of physical harm, public harassment[,] or other such conduct which the cases require to be deemed 'extreme and outrageous.'"  <u>See</u> <u>Standard Wire & Cable Co. v. AmeriTrust Corp.</u>, 697 F. Supp. 368, 372 (C.D. Cal. 1988) (citing cases).

Furthermore, as Defendants point out, asking Plaintiff to say or write her name is in line with TSA guidelines.  (Doc. No. 35 at 5).  Plaintiff's photo identification had expired, and Vences and Paiva determined that it was unacceptable.  (Complaint at ¶¶15, 19).  According to TSA guidelines, the identity verification process in this situation required Plaintiff to fill out a certificate of identity and to answer questions regarding her identity verbally.  See 81 FR 78623-01 ("To initiate the identity verification process, a traveler without an acceptable verifying identity document must complete . . . TSA Form 415 [that] requests the traveler's name and address.  After completing the form, the traveler is connected with TSA's Identity Verification Call Center (IVCC) [who] . . . asks the traveler a series of questions based on information found in the databases to verify the individual's identity.").  This further supports Defendants' argument that the alleged conduct was neither outrageous nor reckless.  See Standard Wire & Cable Co., 697 F. Supp. at 372 (The actions of the defendants were privileged because done in pursuit of their lawful business interests, and not outrageous . . . .").

The Court GRANTS the Motion as to Plaintiff's IIED claim.

### D.  Plaintiff Has Not Alleged Sufficient Facts to State a Claim for Negligent Infliction of Emotional Distress.

To allege a claim for Negligent Infliction of Emotional Distress ("NIED"), Plaintiff must show that (1) Defendants owed her a duty; (2) they breached that duty; (3) Plaintiff has suffered serious emotional distress as a result,

United States District Court
Central District of California

which Defendants should have foreseen; and (4) damages.  See Kasramehr v. Wells Fargo Bank N.A., No. CV 11-00551-GAF, 2011 WL 12473383, at *10 (C.D. Cal. May 18, 2011) (quotation omitted).  "[W]ith rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests."  Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 985 (Cal. 1993).  The rare exceptions are "certain specialized classes of cases[, w]here the negligence is of a type which will cause highly unusual as well as predictable emotional distress."  Branch v. Homefed Bank, 6 Cal. App. 4th 793, 800 (1992).

Here, Plaintiff has not alleged that Vences or Paiva threatened physical injury, or that her case is one of the rare exceptions.  See Kasramehr, 2011 WL 12473383, at *10 (noting rare exceptions include cases "where a defendant mishandled the cremated remains of a plaintiff's brother, a doctor negligently advised a plaintiff's wife that she suffered from syphilis, where the defendant owed the plaintiff fiduciary or quasi-fiduciary duties, and where a plaintiff witnessed injury to a close relative.").  Plaintiff alleges that Vences and Paiva asked her to identify herself when they knew or should have known that she was unable to comply.  (Complaint at ¶¶15, 35).  The Court recognizes the difficulties that Plaintiff's disability causes her while traveling, and is aware that the stress of traveling can be made worse by others' insensitivity.  The type of conduct described by Plaintiff's complaint, however – repeated questioning regarding identity verification at an airport security screening checkpoint – is not the sort that gives rise to a claim for NIED claim.  Therefore, the Court GRANTS the Motion as to Plaintiff's NIED claim.

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Defendants' Motion.  The Court GRANTS Defendants' Motion as to Plaintiff's First, Fifth, Sixth, and Seventh claims for lack of subject matter jurisdiction.  Plaintiff's First, Fifth, Sixth, and Seventh claims are hereby DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction.  The Court GRANTS Defendants' Motion as to Plaintiff's Second, Fourth, Fifth, Sixth, and Seventh claims to the extent that they are brought against Defendant Duke.  Plaintiff's Second, Fourth, Fifth, Sixth, and Seventh claims are DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction to the extent that they are brought against Defendant Duke.  The Court also GRANTS Defendants' Motion as to Plaintiff's Second and Fourth claims for failure to state a claim.  Plaintiff's Second claim is DISMISSED WITHOUT PREJUDICE.  Plaintiff's Fourth claim is DISMISSED WITH PREJUDICE. The Court DENIES Defendants' Motion to dismiss Plaintiff's Third Claim.

**IT IS SO ORDERED.**

Dated:   2/16/18

Virginia A. Phillips
Chief United States District Judge